IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

| | |
|---|---|
| R.T. WYNNE, Beneficiary of Life Insurance of JOYCE M. WYNNE, Deceased.<br><br>    Plaintiff,<br><br>v.<br><br>STONEBRIDGE LIFE INSURANCE COMPANY,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)  No. 09-2001<br>)<br>)<br>)<br>)<br>)<br>) |

---

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

---

On November 24, 2008, Plaintiff R.T. Wynne filed his Complaint against Defendant Stonebridge Life Insurance Company ("Stonebridge") in the Circuit Court of Shelby County, Tennessee, alleging breach of contract and bad faith. Defendant removed the case to this Court on January 2, 2009. Before the Court is Defendant's August 10, 2009, Motion for Summary Judgment. Plaintiff responded in opposition on September 9, 2009, and Defendant replied on October 12, 2009. On November 9, 2009, Plaintiff filed a response to Defendant's reply, and Defendant filed a second reply on November 23, 2009. For the following reasons, Defendant's motion is GRANTED.

   **I.   Background**

The following facts are undisputed unless otherwise stated.[1] The Plaintiff is alleged to be the sole beneficiary of the estate of his father, Joyce M. Wynne, who died on November 23, 2002. (Defendant's Statement of Undisputed Facts ¶ 1.) ("Def.'s SOF") On January 2, 2003, Plaintiff completed and submitted a "proof of accidental death – affidavit of claimant" form to Stonebridge, in which he made a claim under two accidental death certificates and two life insurance certificates. (Id. ¶ 3.) By letter dated February 26, 2003, Al Vick, Senior Claims Examiner at Stonebridge, approved and paid life benefits to Plaintiff under the two life insurance certificates, 74L4073800 and 74L6171304, but denied Plaintiff's claim for benefits under the two accidental death certificates, 74A6938518 and 74AY993014. (Id. ¶ 4.) The letter stated that the information received by Stonebridge:

> does not indicate that your father's death comes within the coverage terms of the accident certificates or accidental death benefit riders. The certified Death Certificate shows your father's death was due to vascular dementia due to multiple cerebrovascular accidents and shows his manner of death as natural . . . it appears your father's death was not due to bodily injury caused by an accident, directly and independently of all other causes as required by the accident certificates and accidental death riders.

(Id. (quoting Feb. 26, 2003 Letter, Dkt. No. 13, Ex. 2, 11.).)

---

[1] Pursuant to Federal Rule of Civil Procedure 56, Defendant filed a Statement of Undisputed Material Facts in support of its Motion for Summary Judgment. Plaintiff's response did not contain responses to Defendant's undisputed facts, nor did it contain an additional statement of undisputed facts.

On April 7, 2003, Plaintiff's counsel wrote a letter to Stonebridge, encouraging Stonebridge to reconsider its position and pay Plaintiff accidental death benefits. (Id. ¶ 5.) By letter dated April 15, 2003, from Vick to Plaintiff's counsel, Stonebridge denied the claim for accidental death benefits. (Id. ¶ 6.) In his letter, Vick cited the statement of the attending physician that the deceased's death was not "due to injury" and again recited the language from the Death Certificate, stating that the deceased died because of "vascular dementia" and "multiple cerebrovascular accidents" and that his manner of death was natural. (Id. (quoting April 7, 2003 Letter, Dkt. No. 13, Ex. 2, 15.).) The letter concluded, "Based upon the medical information in our file, Mr. Wynne's death is not attributable to bodily injury directly and independently of all other causes and we are unable to provide benefits." (Id. (quoting April 7, 2003 Letter, Dkt. No. 13, Ex. 2, 15.).)

Each of the two accidental death certificates at issue in this case, 74A6938518 and 74AY993014, provides that "No action can be brought to recover on the policy for at least 60 days after written proof of loss has been furnished. No such action shall be brought more than 3 years after the date proof of loss is required." (Id. ¶ 7.)

In November 2003, Plaintiff filed a wrongful death lawsuit against the nursing home charged with caring for Joyce M. Wynne.

3

That case was settled in February 2006. (Plaintiff's Response to Motion for Summary Judgment 1.) ("Pl.'s Resp.") Plaintiff alleges that Joyce Wynne "died from accidental and unnatural injuries of unknown origins; the death of Joyce M. Wynne was definitely 'from injuries from accidental bodily injuries received while insured under this policy,' as defined in the defendant's policy." (Compl. ¶ 3.) Plaintiff further alleges that "the Defendant, after reviewing the death certificate as issued by the physician for the residence of the deceased and the Police report of the injuries declined and refused to pay these to the plaintiff." (Compl. ¶ 6.) Plaintiff asserts that Defendant relied on the Death Certificate issued by the physician for the nursing home and "refused to perform a good faith or an independent investigation or honor the accidental provisions of the policy." (Pl.'s Resp. at 2.)

## II. Jurisdiction and Choice of Law

This Court has subject matter jurisdiction under 28 USC § 1441(b) and 28 U.S.C. § 1332. Plaintiff is a resident of Shelby County, Tennessee, and his deceased father was also a resident of Shelby County, Tennessee. Defendant Stonebridge is a corporation organized and existing under the laws of a state other than Tennessee with its principal place of business in a state other than Tennessee. Therefore, complete diversity exists. The amount in controversy exceeds $75,000.

In diversity actions, a federal court applies the choice-of-law provisions of the state in which it sits. Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938); Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941); Cole v. Mileti, 133 F.3d 433, 437 (6th Cir. 1998). Tennessee follows the rule of lex loci contractus, which provides that a contract is presumed to be governed by the law of the jurisdiction in which it was executed absent a contrary intent. Vantage Tech., LLC v. Cross, 17 S.W.3d 637, 650 (Tenn. Ct. App. 1999) (citing Ohio Cas. Ins. v. Travelers Indem. Co., 493 S.W.2d 465, 467 (Tenn. 1973)). The contract appears to have been executed in Tennessee, and the parties assume that Tennessee law applies to the contract dispute. To the extent Plaintiff has sought relief under Tennessee statutory law or common law, the parties assume that Tennessee law governs Plaintiff's claims. See Erie, 304 U.S. at 64 (directing federal courts to apply state law for state law claims). Therefore, the Court will apply Tennessee substantive law.

**III. Standard of Review**

Federal Rule of Civil Procedure 56(c) provides that summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

5

56(c). The party moving for summary judgment "bears the burden of clearly and convincingly establishing the nonexistence of any genuine issue of material fact, and the evidence as well as all inferences drawn therefrom must be read in a light most favorable to the party opposing the motion." Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986). When confronted with a properly supported motion for summary judgment, the nonmoving party must set forth specific facts establishing that there is a genuine issue for trial by showing that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." Id. at 247-48.

When confronted with a properly-supported motion for summary judgment, the nonmoving party may not oppose it by mere reliance on the pleadings. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). Instead, the nonmoving party must present "concrete evidence supporting its claims and establishing the existence of a genuine issue of fact." Cloverdale Equip. Co. v. Simon Aerials, Inc., 869 F.2d 934, 937 (6th Cir. 1989) (citations omitted). The district court does not have a duty to search the record for this evidence; rather, the nonmovant has the duty to point out specific evidence in the record that would

be sufficient to justify a jury decision in his favor. InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989).

### IV. Analysis

#### A. Plaintiff's breach of contract claims are barred by the three-year contractual limitations contained in the accidental death certificates.

Defendant argues that Plaintiff's breach of contract claims are barred by the three-year contractual limitations periods contained in the accidental death certificates. (Defendant's Motion for Summary Judgment 6.) ("Def.'s Motion") Each of the two accidental death certificates, 74A6938518 and 74AY993014, provides, "No action can be brought to recover on the policy for at least 60 days after written proof of loss has been furnished. No such action shall be brought more than 3 years after the date proof of loss is required." (Def.'s SOF ¶ 7.) The certificates further provide, "written proof of loss must be given to [Stonebridge] within 90 days after the date of the loss or as soon as possible." (Id.)

Under Tennessee law, "an insurance policy provision establishing an agreed limitations period within which suit may be filed against the company is valid and enforceable." Brick Church Transmission, Inc. v. S. Pilot Ins. Co., 140 S.W.3d 324, 329 (Tenn. Ct. App. 2003) (citations omitted); see also United States v. Republic Ins. Co., 775 F.2d 156, 160 (6th Cir. 1985)

7

(subrogation case holding that, pursuant to applicable Tennessee law, the federal government was bound to one-year contractual limitations period contained in insurance policy between subrogor and defendant); Algee v. State Farm Gen. Ins. Co., 890 S.W.2d 445, 448 (Tenn. Ct. App. 1994) (enforcing one-year contractual limitations period contained in insurance policy); Hill v. Home Ins. Co., 125 S.W.2d 189, 192-93 (Tenn. Ct. App. 1938) (same).  No showing of prejudice need be made by the insurer to enforce the agreed limitations period.  See Brick Church, 140 S.W.3d at 334.

The decedent died on November 23, 2002.  The ninety-day period ran on February 21, 2003.  Plaintiff completed and submitted a proof of accidental death – affidavit of claimant form to Stonebridge on January 2, 2003.  The claim was denied on April 15, 2003.  The instant lawsuit was filed on November 24, 2008, more than five years later.  Therefore, Plaintiff's breach of contract claims are clearly outside the three-year contractual limitations period.

> 1. **The three-year contractual limitation does not violate public policy and is not unreasonable or unenforceable in the instant suit.**

Plaintiff argues that the limitations period violates public policy and that there is a genuine issue of material fact about whether decedent was on notice of that period. (Pl.'s Resp. 4.)  "Tennessee has long held that an insurance policy

provision establishing an agreed limitations period within which suit may be filed against the company is valid and enforceable." Brick Church, 140 S.W.3d at 329; Guthrie v. Conn. Indem. Ass'n, 49 S.W. 829, 830 (Tenn. 1899); cf. 18 Tenn. Jur. Limitation of Actions § 26 (2005) (noting that, under Tennessee law, parties "may lawfully limit the time within which an action upon such contract may be brought"). Plaintiff has not cited, nor has the Court found, Tennessee case law that would distinguish this case from the many Tennessee cases holding that contractual limitations periods are valid and enforceable.

Plaintiff argues that contractual time provisions "must be reasonable," Appel v. Cooper Ins. Co., 80 N.E. 955, 958 (Ohio 1907), and that "due to the health of the insured and his mental capacity at the time and the other ensuing litigation that followed, this claim should not be time-barred." (Pl.'s Resp. 4.) Plaintiff further argues that "[t]he circumstances, details, interpretation, and intentions of the parties are of tantamount importance in all contract actions." (Plaintiff's Reply to Defendant's Response 2.) ("Pl.'s Sur-reply") Plaintiff argues that Defendant has the burden of showing that the Plaintiff had actual knowledge and understanding of the limitations period when the contract was signed. (Pl.'s Resp. 4.)

9

Neither general contract law nor Tennessee case law supports Plaintiff's argument. "Parties are presumed to know the force and effect of the language in which they have chosen to embody their contracts." Calderon v. Atlas S.S. Co., 170 U.S. 272, 280 (1898). "Parties are presumed to have known what they were signing." NLRB v. Indus. Towel & Unif. Serv., 473 F.2d 1258, 1260 (6th Cir. 1973) (per curiam) (citing NLRB v. Gissel Packing Co., 395 U.S. 575, 606 (1969)). When a party "fails to read the contract or otherwise to learn its contents, he signs the same at his peril and is estopped to deny his obligation, will be conclusively presumed to know the contents of the contract, and must suffer the consequences of his own negligence." Pyburn v. Bill Heard Chevrolet, 63 S.W.3d 351, 359 (Tenn. Ct. App. 2001). "It will not do, for a man to enter into a contract, and, when called upon to respond to its obligations, to say that he did not read it when he signed it, or did not know what it contained." Giles v. Allstate Ins. Co., 871 S.W.2d 154, 157 (Tenn. Ct. App. 1993) (citation and internal quotation marks omitted). If such behavior were allowed, "contracts would not be worth the paper on which they are written." Id. (citation omitted).

Plaintiff argues that, because the decedent had dementia and was diagnosed with Alzheimer's, there are material issues of fact about whether the contracts and their limitations clauses

10

should be enforced. (Pl.'s Resp. 4.) To be of unsound mind, Tennessee law requires that one be "incapable of attending to any business, or of taking care of [himself]." Smith v. Grumman-Olsen Corp., 913 F. Supp. 1077, 1085 (E.D. Tenn. 1995) (citation omitted). "[U]nder Tennessee law, the plaintiff bears the burden of proving the injured party was of unsound mind during the entire time in question." Wade v. Knoxville Utils. Bd., 259 F.3d 452, 461 n.5 (6th Cir. 2001).

Plaintiff is the party in interest in this litigation. He was responsible for bringing and conducting this suit after the death of his father. Plaintiff makes no argument that he was unaware of the contractual limitations period or that he was incapacitated. Plaintiff clearly had knowledge of the certificates themselves because, on or about January 2, 2003, he completed and submitted the proper form to Stonebridge, in which he made a claim under the two accidental death certificates. Plaintiff's arguments about whether he should be bound by the terms of the certificates are not well taken. He should not be excused from complying with the terms of the accidental death certificates under which he made claims within two months after his father's death. For these reasons, the Court finds no merit in Plaintiff's argument that the contractual limitations violate Tennessee public policy or that the three-year limitations period is unreasonable or unenforceable.

### 2. Plaintiff's suit against the nursing home did not toll the contractual limitations of the accidental death certificates.

Plaintiff argues that, when he settled his case with the nursing home in February, 2006, Stonebridge was no longer entitled to rely on his father's Death Certificate and the limitations period began to run. (Plaintiff's Response to Defendant's Reply 3.) ("Pl.'s Sur-reply") Tennessee case law does not support Plaintiff's argument.

In Hill v. Home Insurance Company, the plaintiff filed suit against her home insurer based on the insurer's failure to pay for fire damage to a dwelling. 125 S.W.2d at 190. The claim was denied on February 12, 1934, on the basis that plaintiff was "not the sole and absolute owner" of the property. Id. Plaintiff's parents filed suit (the "Baxter suit") against her on February 1, 1934, alleging that plaintiff was not the present owner of the property. Id. The Baxter suit was not resolved until April 1936, when the Tennessee Supreme Court held that title had passed to plaintiff, with a life estate reserved to her parents. Id. at 191. On June 24, 1936, despite a one-year contractual limitations period, plaintiff filed suit against her insurer for breach of contract and bad faith, contending that the pendency of the Baxter suit had tolled the running of the limitations period in the insurance policy. Id. at 190-91. The Tennessee Court of Appeals held that the Baxter suit did not

12

toll the contractual limitations period, reasoning that the insurer "was not a party to the Baxter case, and had no knowledge or information concerning that case, until after it had been instituted." Id. at 193. The court noted "[t]here is not so much as a suggestion in the record that the defendant Insurance Company aided or abetted the institution, prosecution, or conduct of the Baxter case at any time." Id. Hill is not distinguishable from the pending case. Plaintiff's argument that the pendency of the nursing home case tolled the limitations period is unpersuasive.[2]

Plaintiff's response to Defendant's motion for summary judgment mentions fraud and mistake. To the extent Plaintiff refers to an alleged fraud or mistake by the attending physician or nursing home, as discussed above, such a fraud or mistake does not affect the running of the contractual limitations period. To the extent Plaintiff seeks to accuse Defendant of fraud or mistake, neither the Complaint nor Plaintiff's response does so directly. Plaintiff has failed to meet his burden of pleading these allegations. See Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."); see also

---

[2] This holding is consistent with Tennessee's rejection of the nonmutual offensive use of collateral estoppel. See Trinity Indus., Inc. v. McKinnon Bridge Co., 77 S.W.3d 159, 185 (Tenn. Ct. App. 2001). Thus, any ruling by the court in the nursing home case about whether Joyce Wynne's death was an accident (had such a finding been made) would not bind Stonebridge in the instant case.

Sanderson v. HCA-The Healthcare Co., 447 F.3d 873, 877 (6th Cir. 2006) ("Rule 9(b) requires that the plaintiff specify the 'who, what, when, where, and how' of the alleged fraud.") (citation omitted).

### 3. The language of the accidental death certificates is not ambiguous or contradictory.

Plaintiff argues that, because the language of the accidental death certificates is unclear, Tennessee's six-year statute of limitations, as opposed to the three-year contractual limitations, should control. (Pl.'s Resp. 7.) Plaintiff cites the "PROOF OF LOSS" language in the certificates, which states: "Written proof of loss must be given to [Stonebridge] within 90 days after the date of loss or as soon as possible. Proof must, however, be furnished no later than one year from the time it is otherwise required." (Def.'s SOF ¶ 7.) Plaintiff argues that, based on this language, it is reasonable to conclude that, in this situation, "as soon as possible" meant after the conclusion of the dispute with the nursing home and that "there are mixed questions of law and fact that must be answered" about the language of the certificates. (Pl.'s Resp. 7-8.)

The language of the accidental death certificates is not ambiguous or contradictory. Each states that proof must be given "within 90 days or as soon as possible." (Def.'s SOF ¶ 7.) The certificates further provide that proof must "be

14

furnished no later than one year from the time it is otherwise required; except in the absence of legal capacity." (Id.) Joyce Wynne died on November 23, 2002. (Compl. ¶¶ 3-4.) On or about January 2, 2003, Plaintiff completed and submitted proof to Stonebridge, in which he made a claim under the two accidental death certificates at issue. Therefore, Plaintiff timely submitted written proof of loss as required by the certificates. He did so "as soon as possible" on January 2, 2003, well within the ninety-day period.

Ninety days after the date of decedent's death was February 21, 2003, which is the latest date the three-year contractual limitations period began to run pursuant to the language of the certificates. See (Def.'s SOF ¶ 7 ("No such action shall be brought more than 3 years after the date proof of loss is required.").) The one-year tolling period does not apply here because actual proof of loss was submitted during the ninety-day claim period. Therefore, the limitations period expired not later than February 21, 2006.[3] The instant lawsuit was filed on November 24, 2008 and is clearly barred by the contractual limitations period.

---

[3] Even if the tolling provisions of the proof of loss clause were applicable, thus giving Plaintiff the initial ninety days plus one year before proof-of-loss was required, the contractual limitations period would have begun to run not later than February 21, 2004, more than four years before the instant suit was filed.

15

Plaintiff's argument that the "as soon as possible" language of the accidental death certificates makes the certificates ambiguous is not well taken. The language "as soon as possible" is designed to rescue a claimant whose claim would otherwise be barred because it was impossible to submit written proof of loss within the normal ninety-day window. This interpretation is confirmed by the second sentence of the proof-of-loss clause, which provides, "Proof must, however, be furnished no later than one year from the time it is otherwise required." Proof of loss is "otherwise required" within ninety days of loss and must, under all circumstances, be submitted within one year of the expiration of the initial ninety-day period. The language is unambiguous and is the only reasonable way to interpret or give effect to these two sentences. See Maggart v. Almany Realtors, Inc., 259 S.W.3d 700, 704 (Tenn. 2008) (the interpretation of a contract "should be one that gives reasonable meaning to all of the provisions . . . without rendering portions of it neutralized or without effect.") (citation omitted). The Court should not "use a strained construction of the language to find an ambiguity where none exists." Id. (citation omitted). Plaintiff has offered no contrary reasonable interpretation of the certificates' language and initially complied with the clear language of the certificates, submitting proof of loss only forty days after the

death of his father. Therefore, the language of the accidental death certificates is unambiguous and the contractual limitations period controls.

### B. Bad faith claims

Plaintiff's Complaint alleges that Defendant denied his claims in bad faith. (Compl. ¶ 1.) It does not state any further factual or legal basis for that allegation. "Tennessee does not recognize a general common law tort for bad faith by an insurer against an insured; the exclusive remedy is statutory." Cracker Barrel Old Country Store, Inc. v. Cincinnati Ins. Co., 590 F. Supp. 2d 970, 972 (M.D. Tenn. 2008) (citations omitted). Therefore, any claims of bad faith must be brought pursuant to Tennessee's bad faith statute, Tennessee Code Annotated § 56-7-105.

To recover under the statute, a plaintiff must prove, inter alia, that a formal demand for payment was made, and the plaintiff "must have waited 60 days after making demand before filing suit (unless there was a refusal to pay prior to the expiration of the 60 days) . . . ." Ginn v. Am. Heritage Life Ins. Co., 173 S.W.3d 433, 443 (Tenn. Ct. App. 2004). Stonebridge denied Plaintiff's claim by letter dated April 15, 2003. At that point, Plaintiff was entitled to bring suit against Stonebridge pursuant to the bad faith statute.

17

Tennessee Code Annotated § 28-3-104(a)(4) provides a one-year statute of limitations period applicable to "actions for statutory penalties." The bad faith statute is penal in nature. See Ginn, 173 S.W.3d at 443. Plaintiff was entitled to bring his suit on April 15, 2003. He waited more than five years. Therefore, the statute of limitations has run as to any bad faith claims, and Defendant's motion for summary judgment on those claims is GRANTED. See Tenn. Code Ann. § 28-3-104(a)(4).

**V.     Conclusion**

For the foregoing reasons, Defendant's motion for summary judgment is GRANTED.

So ordered this 22nd day of February, 2010.

s/ Samuel H. Mays, Jr.
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE